JOSE DE ARRUDA *vs.* THE NEWPORT CREAMERY, INC.

FEBRUARY 26, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.  This action of trespass on the case for negligence was tried in the superior court to a jury. At the conclusion of the plaintiff's testimony the trial justice granted the defendant's motion for a nonsuit. The case is before us on the plaintiff's exception to this ruling.

The material facts in evidence are as follows. At about 7:50 o'clock on the morning of November 13, 1934, the plaintiff, a farmer seventy-two years old, was driving an antiquated Ford truck, with a covered body, southerly on Turners Road towards its intersection with Wyatt Road in the town of Middleton, Turners Road running approximately north and south, and Wyatt Road running approximately east and west for some distance in the vicinity of that intersection.  The defendant's truck, which figured in this accident, was being driven by an agent of the defendant easterly on Wyatt Road towards the intersection.  Both

streets have a macadam-bound surface, and are apparently secondary highways of equal importance, some 18 feet wide, clearly marked with warnings for traffic approaching the intersection as in this case.

On the westerly side of Turners Road there are two warning signs for vehicles moving south on that road towards the intersection. The distance between these two signs is 141 feet. The first sign reads "Stop Sign Ahead" and the second sign which is at the northwest corner of the intersection about in line with a stone wall of undisclosed height surrounding the property at that corner, the character of which is also undetermined, says: "Stop Thru Traffic." It is clear from the evidence that the plaintiff obeyed both of these warnings and that he came to a full stop before proceeding across the intersection.

As one proceeds easterly on Wyatt Road towards the intersection he comes to a traffic sign on the southerly side of that road, about 175 feet from the center of the intersection, which reads: "Cross Roads—Slow", the word "Slow" being in large letters. Some distance east of this sign the word "Slow" is painted in letters two feet high on the southerly side or right-hand lane of the road for vehicles moving in that direction. Further east of this word "Slow" and about 85 feet from the traffic sign just mentioned, Wyatt Road is divided into two lanes by a white traffic line painted on the center of the roadbed. This line runs easterly in this position until it reaches the intersection, where it curves in a northerly direction through the intersection and ends at a point about the center of Turners Road and about opposite the stop sign at the northwest corner of that road. There are seven driveways on Wyatt Road as one moves easterly towards the intersection, one or two on its south side and the rest on its north side. The evidence does not show the distance from the intersection to any of these driveways, especially those entering Wyatt Road from the north.

On the northeast corner of the intersection and facing Wyatt Road is a church, adjoining which is a cemetery with an entrance from that road some 420 feet east of the intersection. Directly in front of the church there is a "no parking" sign about 65 feet from the intersection. The "Parsonage", so-called, is located on the southwest corner of the intersection some 30 feet back from each road.

The plaintiff, who was the only witness who testified to the accident itself, testified that, before starting from his position at the northwest corner of Turners Road and Wyatt Road, where he had brought his truck to a full stop in compliance with the traffic sign at that corner, he looked to his right on Wyatt Road "towards where the parsonage is located" and saw "no car coming that side of the road"; that he next looked straight ahead and then to his "left down near the church", and, seeing no traffic approaching the intersection from any direction, he started to cross it at slow speed; that before reaching the center of the intersection he again looked to his right and then saw "a car coming flying on the wrong side of the road . . . more on the left side than the right" of Wyatt Road; that he could not tell how far away the car was from his when he saw it from this position; that he immediately put on the brakes and stopped his truck; and that there was plenty of room for that car, which later proved to be the defendant's truck, to pass in front of him, but that it ran into the front right side of his truck. His testimony on cross-examination was that when he looked to his right at the stop sign he could see "up Wyatt Road a long way" and that there was then nothing in sight.

The plaintiff further testified that his truck was dragged on Wyatt Road to the east of the intersection and tipped over, with him in the driver's seat, on its left side about opposite the "no parking" sign in front of the church, which, as we have already stated, is some 65 feet from the intersection; that the defendant's truck went as far as the

cemetery gate before stopping; and that after it began backing towards him he saw no more because his eyes became "kind of blind." The plaintiff was taken to the Newport Hospital.

Four persons, who came upon the scene in different automobiles soon after the accident, appeared as witnesses for the plaintiff. All testified substantially to the effect that the plaintiff's truck was tipped over on its left side in front of the "no parking" sign, and that the defendant's truck was stopped some 40 or 50 feet further east. One of these witnesses testified that he first saw the defendant's truck when it was about halfway between the intersection and the cemetery, backing towards the plaintiff.

An examination of the plaintiff's truck by the service superintendent of a local Ford agency showed, among other things, that the right front of the radiator, the right side of the hood, the front axle, the front right fender and the running board on the right side were twisted and bent inwards and that the body of the truck was "knocked completely out of shape." According to this witness, the truck was not worth repairing.

In granting the defendant's motion for a nonsuit the trial justice said: "The plaintiff has made out a strong case of negligence on the part of the defendant, but he has failed as a matter of law to show that he was in the exercise of due care and not guilty of contributory negligence." Taking the facts in evidence as true and giving to the plaintiff the benefit of every reasonable inference therefrom, which is required by our well-established rule governing a motion for nonsuit, we cannot agree with the trial justice that the plaintiff was guilty of contributory negligence as a matter of law. This court has consistently held that ordinarily the contributory negligence of a plaintiff is a question of fact for the jury, unless the facts and inferences reasonably to be drawn therefrom admit of but one conclusion, namely, that the plaintiff clearly did not exercise the care that ordi-

nary prudence demanded under the particular circumstances in evidence. As we said in *United Electric Railways Co.* v. *Pennsylvania Petroleum Products*, 55 R. I. 154, at page 158: "The general rules regarding the duty of drivers to look are reasonably well settled, but their application is affected by each set of facts." See also *Dembicer* v. *Pawtucket Cabinet & Builders Finish Co., Inc.*, 58 R. I. 451.

In the instant case the plaintiff was not bound to observe traffic conditions on Wyatt Road for an unreasonable distance west of the intersection before starting to cross the intersection, even if he could see a "long way" up that road. If persons of ordinary prudence could honestly disagree as to whether it was the part of ordinary prudence to start across the intersection under the conditions that were or should have been reasonably apparent to the plaintiff when he was stopped at the corner of Turners Road, then the plaintiff cannot be held guilty of contributory negligence as a matter of law. From the fact that the plaintiff testified that, when he was part way across the intersection, he saw the defendant's truck "flying on the wrong side of the road" toward the intersection, the defendant argues that the plaintiff, when he was stopped just before entering the northwest corner of the intersection, could and should have seen the defendant's truck approaching the intersection in the manner above stated. But in the circumstances of this case that conclusion does not necessarily follow from the premise stated.

Giving due consideration to the time that must have elapsed while the plaintiff was making other necessary observations for his own safety before starting to cross the intersection, and to the further fact that there are at least five driveways on the north side of Wyatt Road from which the defendant's truck may have come on to that road between the first and the second time that the plaintiff looked to his right on Wyatt Road, we cannot say, as the trial justice did, that the only conclusion to be drawn from the evi-

dence is that the plaintiff heedlessly started to cross the intersection in the face of obvious danger. The facts and circumstances disclosed by the record before us required that the defendant go forward with its evidence.

The plaintiff's exception is sustained and the case is remitted to the superior court for a new trial.

*Cornelius C. Moore, Charles H. Drummey,* for plaintiff.

*Clifford A. Kingsley, Francis V. Reynolds, William P. Sheffield,* for defendant.